revisions of $83.8 million related primarily to the merger with AMP Incorporated ("AMP") and costs associated with AMP's profit improvement plan; $38.3 million related to the Company's 1997 restructuring plans; and $15.5 million related primarily to the merger with United States Surgical Corporation ("USSC"). The changes in estimates of the restructuring plan at AMP were attributable primarily to increased demand for certain of AMP's products which was not anticipated at the time of the merger and to recent acquisitions such as Siemens EC. Therefore, the Company has determined not to close several facilities and not to terminate approximately 3,000 employees, whose costs were provided for in previous AMP restructuring plans. In addition, certain restructuring activities at AMP were completed for amounts lower than originally anticipated. The changes in estimates of the Company's 1997 restructuring plans and the USSC restructuring plans were due primarily to the completion of activities for amounts lower than originally recorded. The charges of $14.4 million consist of $7.9 million related to the Company's exiting the USSC interventional cardiology business, of which $6.4 million is included in cost of sales, and $6.5 million related to the restructuring of AMP's Brazilian operations....

397.   Likewise, Defendants made the following similar false representation in the

June 2000 10-Q/A:

In the quarter ended December 31, 1999, the Company established restructuring and other non-recurring reserves of $22.1 million primarily related to the exiting of USSC's interventional cardiology business, charges associated with USSC's suture business and the restructuring of AMP's Brazilian operations. At September 30, 1999, there existed merger, restructuring and other non-recurring reserves of $399.3 million. During the quarter ended December 31, 1999, the Company paid out $58.3 million in cash and incurred $19.9 million in non-cash charges that were charged against these reserves. Also in the quarter ended December 31, 1999, the Company determined that $94.7 million of merger, restructuring and other non-recurring reserves established in prior years was not needed and recorded a credit to the merger, restructuring and other non-recurring charges line item in the Consolidated Statement of Operations. The changes in estimates of the restructuring plan at AMP were attributable primarily to increased demand for certain of AMP's products which was not anticipated at the time of the merger and to recent acquisitions such as Siemens EC. Therefore, the Company has determined not to close several facilities and not to terminate approximately 3,000 employees, whose costs were provided for in previous AMP restructuring plans. In addition, certain restructuring activities at AMP were completed for amounts lower than originally anticipated. The changes in estimates of the Company's 1997 restructuring plans and the USSC restructuring plans were due primarily to the completion of activities for amounts lower than originally recorded. At December 31, 1999, there remained $248.5 million of merger, restructuring and other non-recurring reserves on the Company's Consolidated Balance Sheet, of which $204.3 million is included in current liabilities and $44.2 million is included in long-term liabilities.

398.    Those representations concerning Tyco's reserves were materially false and misleading because Defendants failed to disclose that they manipulated Tyco's accounting reserves - particularly those related to the US Surgical and AMP transactions - in the manner specified above.

### d.    Defendants' Materially False And Misleading Statements In The December 1999 S-4 And Its Related SEC Filings

399.    On December 21, 1999, Tyco filed with the SEC a Form S-4 relating to the Company's proposed offer to exchange up to $1 billion aggregate principal amount of new 6 7/8% notes due 2002 for any and all of its outstanding 6 7/8% notes due 2002 (the "December 1999 S-4"). Defendants Swartz, Kozlowski and Walsh signed the December 1999 S-4. Because the December 1999 S-4 incorporated Tyco's 1999 10-K by reference, the S-4 contained the same materially false and misleading statements as the 1999 10-K.

400.    On June 26, 2000, Tyco filed with the SEC a Form S-4/A (the "June 2000 S-4/A") that amended the December 1999 S-4. The June 2000 S-4/A was signed by defendant Swartz for himself and for defendants Kozlowski and Walsh.

401.    Because the June 2000 S-4/A incorporates the following documents by reference, it contains the same materially false and misleading statements as those documents: the 1999 10-K; the 1999 10-K/A; the February 2000 10-Q; the June 2000 10-Q/A; the May 2000 10-Q; and the June 2000 10-Q/A(2).

402.    On June 30, 2000, Tyco filed with the SEC a Prospectus for the offering described in the December 1999 S-4.

403.    Because the June 2000 Prospectus incorporates by reference the same documents as the June 2000 S-4/A, both documents contain the materially false and misleading statements contained in the incorporated documents.

96

### e.   Defendants' Material Misrepresentations And Omissions In The January 2000 S-8

404.   On January 28, 2000, Tyco filed with the SEC a Form S-8 for the registration of

10,000,000 shares of Tyco common stock (the "January 2000 S-8"). That document was signed

by defendants Swartz, Kozlowski and Walsh. Because the January 2000 S-8 incorporated

Tyco's 1999 10-K by reference, the S-8 contained the same materially false and misleading

statements as the 1999 10-K.

### f.   Defendants' Materially False And Misleading Statements Concerning Tyco's Results For The Quarter Ended March 31, 2000

405.   On April 18, 2000, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended March 31, 2000.  In that press release,

Defendants falsely stated:

> Tyco International Ltd..... a diversified manufacturing and service company, reported today that diluted earnings per share before non-recurring charges and credits and extraordinary item, for its second quarter ended March 31, 2000 were 50 cents per share, a 47 percent increase over 34 cents per share for the same quarter last year. Net income rose to $853.6 million, an increase of 50 percent compared to $567.8 million last year. Sales for the quarter rose 35 percent to $7.07 billion compared with last year's $5.24 billion. The results for last year have been restated to reflect the merger with AMP, which occurred on April 2, 1999 and was accounted for as a pooling of interests, and are before acquisition-related and non-recurring charges and extraordinary item. After giving effect to acquisition related and other non-recurring charges and credits, and extraordinary item, diluted earnings per share were 50 cents, or $855.9 million, in fiscal 2000 compared to 7 cents, or $119.5 million, in fiscal 1999.
>
> Income before non-recurring charges and credits and extraordinary items for the first half of fiscal 2000 rose to $1.64 billion, or 96 cents per diluted share, a 48 percent increase over last year's diluted per share earnings of 65 cents. After giving effect to acquisition related and other non-recurring charges and credits, and extraordinary item, diluted earnings per share were 96 cents, or $1.65 billion for the first half of fiscal 2000 compared to 1 cent, or $9.4 million, in fiscal 1999. Revenues for the first half increased to $13.7 billion, 31 percent higher than last year's $10.5 billion.

406.    On May 15, 2000, Tyco filed its Form 10-Q for the quarter ended March 31,

2000 (the "May 2000 10-Q") with the SEC.  Defendant Swartz signed that document.

407.    Defendants set forth the following materially false and misleading description of

the financial results produced by Tyco for the March quarter in the May 2000 10-Q:

> Sales increased 35.0% during the quarter ended March 31, 2000 to $7,070.0
> million from $5,238.7 million in the quarter ended March 31, 1999.  Income
> before extraordinary items was $855.9 million in the quarter ended March 31,
> 2000, as compared to $162.0 million in the quarter ended March 31, 1999.
> Income before extraordinary items for the quarter ended March 31, 2000
> included an after-tax net credit of $2.3 million ($2.3 million pre-tax) consisting
> of a credit of $9.5 million ($12.7 million pre-tax) representing a revision of
> estimates of merger, restructuring and other non-recurring accruals, offset by
> restructuring charges of $7.2 million ($10.4 million pre-tax) primarily related to
> AMP'S operations.  Income before extraordinary items for the quarter ended
> March 31, 1999 included an after-tax charge of $285.6 million ($329.9 million
> pre-tax) related to AMP'S profit improvement plan.

408.    In addition, Defendants stated:

> Operating income improved in all segments in the six months ended March 31,
> 2000 as compared to the six months ended March 31, 1999.  The operating
> improvements are the result of both increased revenues and enhanced margins.
> Increased revenues resulted from organic growth and from acquisitions.

409.    That misrepresentation was repeated by the Defendants in an amendment to the

May 2000 10-Q that was signed by Swartz and filed with the SEC on June 26, 2000 (the "June

2000 10-Q/A(2)").

410.    Defendants' representations concerning the financial results generated by Tyco

for the quarter ended March 31, 2000 were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

411.    The May 2000 10-Q also contains the following materially misleading

characterization of Tyco's restructuring and merger reserves:

> In the six months ended March 31, 2000, the Company established restructuring
> and other non-recurring reserves of $24.8 million, of which $7.3 million is

included in cost of sales, primarily related to the exiting of USSC's interventional cardiology business and the restructuring activities in AMP's Brazilian operations and wireless communications business. At September 30, 1999, there existed merger, restructuring and other non-recurring reserves of $453.3 million. During the six months ended March 31, 2000, the Company paid out $92.4 million in cash and incurred $45.5 million in non-cash charges that were charged against these reserves. Also in the six months ended March 31, 2000, the Company determined that $150.3 million of merger, restructuring and other non-recurring reserves established in prior years was not needed and recorded a credit of $144.0 million to the merger, restructuring and other non-recurring charges line item and a credit of $6.3 million to the cost of sales line item in the Consolidated Statement of Operations. The changes in estimates of the restructuring plan at AMP were attributable primarily to increased demand for certain of AMP's products which was not anticipated at the time of the merger and to recent acquisitions such as Siemens EC. Therefore, the Company has determined not to close several facilities and not to terminate approximately 3,000 employees, the costs of which were provided for in previous AMP restructuring plans. In addition, certain restructuring activities at AMP were completed for amounts lower than originally anticipated. The changes in estimates of the Company's 1997 restructuring plans and the USSC restructuring plans were due primarily to the completion of activities for amounts lower than originally recorded. At March 31, 2000, there remained $189.9 million of merger, restructuring and other non-recurring reserves on the Company's Consolidated Balance Sheet, of which $147.6 million is included in current liabilities and $42.3 million is included in long-term liabilities.

412.    The June 2000 10-Q/A(2) set forth the following similar material

misrepresentation:

In the six months ended March 31, 2000, the Company established restructuring and other non-recurring reserves of $33.0 million, of which $7.3 million is included in cost of sales, primarily related to the exiting of USSC's interventional cardiology business, charges associated with USSC's suture business and the restructuring activities in AMP's Brazilian operations and wireless communications business. At September 30, 1999, there existed merger, restructuring and other non-recurring reserves of $399.3 million. During the six months ended March 31, 2000, the Company paid out $92.4 million in cash and incurred $45.5 million in non-cash charges that were charged against these reserves. Also in the six months ended March 31, 2000, the Company determined that $107.4 million of merger, restructuring and other non-recurring reserves established in prior years was not needed and recorded a credit of $101.1 million to the merger, restructuring and other non-recurring charges line item and a credit of $6.3 million to the cost of sales line item in the Consolidated Statement of Operations. The changes in estimates of the restructuring plan at AMP were attributable primarily to increased demand for certain of AMP's products which was not anticipated at the time of the merger and to recent acquisitions such as Siemens EC. Therefore, the Company has

determined not to close several facilities and not to terminate approximately 3,000 employees, the costs of which were provided for in previous AMP restructuring plans. In addition, certain restructuring activities at AMP were completed for amounts lower than originally anticipated. The changes in estimates of the Company's 1997 restructuring plans and the USSC restructuring plans were due primarily to the completion of activities for amounts lower than originally recorded. At March 31, 2000, there remained $187.0 million of merger, restructuring and other non-recurring reserves on the Company's Consolidated Balance Sheet, of which $144.7 million is included in current liabilities and $42.3 million is included in long-term liabilities.

413. Those representations concerning Tyco's reserves were materially false and misleading because Defendants failed to disclose that they manipulated Tyco's accounting reserves - particularly those related to the US Surgical and AMP transactions - in the manner specified above in order to spring-load Tyco's post-acquisition financial results.

### g. Defendants' Materially Misleading Representations And Omissions In The Mallinckrodt Transaction SEC Filings

414. On July 12, 2000, Tyco filed with the SEC a Form S-4 relating to a proposed merger between Mallinckrodt Inc. and a subsidiary of Tyco (the "July 2000 Mallinckrodt S-4"). That document was signed by defendants Swartz, Kozlowski and Walsh. Because the July 2000 Mallinckrodt S-4 incorporates the following documents by reference, it contains the same materially false and misleading statements as those documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000 10-Q and the June 2000 10-Q/A(2).

415. On August 9, 2000, Tyco filed with the SEC a Form S-4/A (the "August 2000 Mallinckrodt S-4/A") that amended the July 2000 Mallinckrodt S-4. Defendant Swartz for himself and for defendants Kozlowski and Walsh signed the August 2000 Mallinckrodt S-4/A.

416. The August 2000 Mallinckrodt S-4/A was materially false and misleading because it incorporated by reference the same documents as the July 2000 Mallinckrodt S-4.

417.    On August 11, 2000, Tyco filed a Prospectus relating to the Mallinckrodt transaction (the "August 2000 Mallinckrodt Prospectus") with the SEC. That document was also materially false and misleading because it incorporated by reference the same documents as the July 2000 Mallinckrodt S-4.

### h.    Defendants' Material Misrepresentations And Omissions In The 2000 Euro Offering SEC Filings

418.    On July 24, 2000, Tyco filed with the SEC a Form S-4 relating to Tyco's proposal to exchange up to Euro 600,000,000 aggregate principal amount of new 6 1/8% notes due 2007 for any and all of its outstanding 6-1/8% Notes due 2007 (the "July 2000 Euro S-4"). Defendants Swartz, Kozlowski, and Walsh signed that document

419.    Because the July 2000 Euro S-4 incorporates the following documents by reference, it contains the same materially false and misleading statements set forth in those documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000 10-Q and the June 2000 10-Q/A(2).

420.    On August 3, 2000, Tyco filed with the SEC a Form S-4/A (the "August 2000 Euro S-4/A") that amended the July 2000 Euro S-4. Defendant Swartz for himself and for defendants Kozlowski and Walsh signed that document.

421.    Because the August 2000 Euro S-4/A incorporates by reference the same documents as the July 2000 Euro S-4, both SEC filings are materially false and misleading for the same reasons as the incorporated documents.

422.    The August 2000 Euro S-4/A also sets forth the following materially misleading description of Tyco's financial results for the Company's third fiscal quarter of 2000:

> On July 19, 2000, Tyco announced its results for the third quarter of fiscal 2000, the three and nine months ended June 30, 2000. Tyco reported that diluted earnings per share before non-recurring charges and credits and extraordinary item, for its third quarter ended June 30, 2000 were 58 cents per share, a 38 percent increase over 42 cents per share for the same quarter last year. Net

income rose to $992.1 million, an increase of 42 percent compared to $699.4 million last year. Sales for the quarter rose 27 percent to $7.42 billion compared with last year's $5.82 billion. The results for last year are before restructuring and non-recurring charges and extraordinary item. After giving effect to restructuring and other non-recurring charges and credits, diluted earnings per share before extraordinary item were 58 cents, or $997.3 million, in fiscal 2000 compared to 13 cents, or $212.2 million, in fiscal 1999.

Income before non-recurring charges and credits and extraordinary items for the nine months of fiscal 2000 rose to $2.63 billion, or $1.54 per diluted share, a 44 percent increase over last year's diluted per share earnings of $1.07. After giving effect to acquisition related and other non-recurring charges and credits, diluted earnings per share before extraordinary item were $1.52, or $2.61 billion for the first nine months of fiscal 2000 compared to 17 cents, or $286.9 million, in fiscal 1999. Revenues for the nine months increased to $21.13 billion, 30 percent higher than last year's $16.27 billion.

423.    Those representations were materially false and misleading because Defendants failed to disclose that Tyco produced the reported results only by engaging in the accounting improprieties and manipulations specifically alleged herein.

424.    On August 11, 2000, Tyco filed with the SEC a Prospectus (the "August 2000 Euro Prospectus") for the offering described in the July 2000 Euro S-4. Because that Prospectus incorporates by reference the same documents that were incorporated by reference in the August 2000 Euro S-4/A, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

425.    The August 2000 Euro Prospectus also set forth the materially misleading description of Tyco's financial results for the third fiscal quarter of 2000 that appears in the August 2000 Euro S-4/A.

426.    On November 29, 2000, Tyco filed a Post-Effective Amendment to the July 2000 Euro S-4 and the August 2000 Euro S-4/A (the "November 2000 Post-Effective Amendment") with the SEC. Defendant Swartz for himself and for defendants Kozlowski and Walsh signed that document.

102

427.    The November 2000 Post-Effective Amendment incorporates by reference the

same documents as the August 2000 Euro Prospectus.  As a result, the November 2000 Post-

Effective Amendment contains the same materially false and misleading representations as the

incorporated documents.

428.    The November 2000 Post-Effective Amendment also sets forth the following

materially misleading description of Tyco's financial results for the Company's fiscal 2000 and

the fourth quarter of that fiscal year:

> On October 24, 2000, Tyco announced its results for the fourth quarter of fiscal
> 2000, the three months ended September 30, 2000. For the fiscal 2000 fourth
> quarter, income before restructuring and other non-recurring credits, charges,
> gain and extraordinary items was $1.10 billion, or $0.64 per diluted share, as
> compared to $782.7 million, or $0.46 per diluted share, for the quarter ended
> September 30, 1999. After giving effect to restructuring and other non-recurring
> credits, charges, gain and extraordinary items, net income for the fourth quarter
> of fiscal 2000 was $1.91 billion, or $1.12 per diluted share, compared to $780.5
> million, or $0.46 per diluted share, in the fourth quarter of fiscal 1999. Results
> in the fourth quarter of fiscal 2000 included a $1.76 billion pretax gain from the
> initial public offering of TyCom Ltd. Fourth quarter sales rose 25% to $7.81
> billion, up from $6.22 billion a year ago.
>
> For fiscal 2000, revenues increased to $28.93 billion, up 29% from revenues of
> $22.50 billion in fiscal 1999. Income before restructuring and other non-
> recurring credits, charges, gain and extraordinary items rose to $3.73 billion, or
> $2.18 per diluted share, a 42% increase over $1.53 per diluted share in fiscal
> 1999. After giving effect to restructuring and other non-recurring credits,
> charges, gain and extraordinary items, net income for fiscal 2000 was $4.52
> billion, or $2.64 per diluted share, compared to $1.02 billion or $0.61 per
> diluted share, in fiscal 1999.

429.    Those representations were materially false and misleading because

Defendants failed to disclose that Tyco produced the reported results only by engaging in the

accounting improprieties and manipulations specifically alleged herein.

430.    In addition, the November Post-Effective Amendment included the following

materially misleading representations concerning the merger and restructuring charges taken

by Tyco during various accounting periods:

Earnings for the nine months ended June 30, 2000, the years ended September 30, 1999 and 1998, the nine months ended September 30, 1997 and the years ended December 31, 1996 and 1995 include net merger, restructuring and other nonrecurring (credits) charges of $(81.3) million (of which net charges of $1.0 million are included in cost of sales), $1,035.2 million (of which $106.4 million is included in cost of sales), $256.9 million, $947.9 million, $344.1 million and $97.1 million, respectively. Earnings also include charges for the impairment of long-lived assets of $99.0 million, $507.5 million, $148.4 million, $744.7 million and $8.2 million in the nine months ended June 30, 2000, the year ended September 30, 1999, the nine months ended September 30, 1997 and the years ended December 31, 1996 and 1995, respectively.

431.    Those representations were materially false and misleading because, as is specifically alleged herein, Defendants manipulated the accounting reserves maintained by Tyco in order to spring-load the Company's post-acquisition financial results.

### i.    Defendants' Materially False And Misleading Representations In The December 2000 TIGSA Prospectus

432.    On December 15, 2000, Tyco filed with the SEC a Prospectus relating to the proposed offer by Tyco International Group S.A. to exchange up to (Euro) 26,885,000 aggregate principal amount of new 6 1/8% notes due 2007 for any and all of its outstanding 6 1/8% notes due 2007 not heretofore exchanged (the "December 2000 TIGSA Prospectus").

433.    Because the December 2000 TIGSA Prospectus incorporates by reference the same documents that were incorporated by reference in the November 2000 Post-Effective Amendment, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

434.    The December 2000 TIGSA Prospectus also contains the same description set forth in the November 2000 Post-Effective Amendment concerning Tyco's financial results for the Company's fiscal 2000 and the fourth quarter of that fiscal year. The statements in the December 2000 TIGSA Prospectus are therefore materially false and misleading for the same reasons as the statements that appear in the November 2000 Post-Effective Amendment.

435.   Moreover, the December 2000 TIGSA Prospectus contains the same materially

false and misleading representations concerning Tyco's merger and restructuring charges as the

November 2000 Post-Effective Amendment.

### j.   Defendants' False And Misleading Statements Concerning The Company's Financial Results For The Quarter Ended June 30, 2000

436.   On July 19, 2000, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended June 30, 2000.  In that press release,

Defendants falsely stated:

> Tyco International Ltd. . . . a diversified manufacturing and service company, reported today that diluted earnings per share before non-recurring charges and credits and extraordinary item, for its third quarter ended June 30, 2000 were 58 cents per share, a 38 percent increase over 42 cents per share for the same quarter last year. Net income rose to $992.1 million, an increase of 42 percent compared to $699.4 million last year. Sales for the quarter rose 27 percent to $7.42 billion compared with last year's $5.82 billion. The results for last year are before restructuring and non-recurring charges and extraordinary item. After giving effect to restructuring and other non-recurring charges and credits, diluted earnings per share before extraordinary item were 58 cents, or $997.3 million, in fiscal 2000 compared to 13 cents, or $212.2 million, in fiscal 1999.

> Income before non-recurring charges and credits and extraordinary items for the nine months of fiscal 2000 rose to $2.63 billion, or $1.54 per diluted share, a 44 percent increase over last year's diluted per share earnings of $1.07. After giving effect to acquisition related and other non-recurring charges and credits, diluted earnings per share before extraordinary item were $1.52, or $2.61 billion for the first nine months of fiscal 2000 compared to 17 cents, or $286.9 million, in fiscal 1999. Revenues for the nine months increased to $21.13 billion, 30 percent higher than last year's $16.27 billion.

437.   On August 14, 2000, Tyco filed the Company's Form 10-Q for the quarter ended

June 30, 2000 (the "August 2000 10-Q") with the SEC.  Defendant Swartz signed that document.

438.   The August 2000 10-Q sets forth the following materially misleading

representations concerning Tyco's financial results for the quarter and nine-month fiscal periods

ending June 30, 2000:

Operating income, before certain credits (charges), improved in all segments in the quarter and nine months ended June 30, 2000 as compared to the quarter and nine months ended June 30, 1999. The operating improvements are the result of increased revenues and enhanced margins in certain segments. Increased revenues resulted from organic growth and from acquisitions.

439.   In addition, Defendants falsely stated:

Sales increased 27.5% during the quarter ended June 30, 2000 to $7,417.8 million from $5,819.8 million in the quarter ended June 30, 1999. Income before extraordinary items was $997.3 million in the quarter ended June 30, 2000, as compared to $212.2 million in the quarter ended June 30, 1999. Income before extraordinary items for the quarter ended June 30, 2000 included an after-tax net credit of $5.2 million ($6.9 million pre-tax) consisting of a credit of $7.3 million ($9.8 million pre-tax) representing a revision of estimates of merger, restructuring and other non-recurring accruals, offset by restructuring charges of $2.1 million ($2.9 million pre-tax) related to USSC's suture business. Income before extraordinary items for the quarter ended June 30, 1999 included an after-tax net charge of $487.2 million ($545.9 million pre-tax) consisting of merger, restructuring and non-recurring, and impairment charges of $532.5 million ($615.6 million pre-tax) primarily related to the merger with AMP and AMP's profit improvement plan, offset by a credit of $45.3 million ($69.7 million pre-tax). The pre-tax credit consists of $50.0 million relating to a litigation settlement with Allied Signal Inc. and $19.7 million representing a revision of estimates related to the Company's 1997 restructuring and other non-recurring accruals.

440.   Those representations concerning Tyco's financial results were materially false and misleading because Defendants failed to disclose that Tyco produced the reported results only by engaging in the accounting improprieties and manipulations specifically alleged herein.

441.   In addition, the August 2000 10-Q makes the following materially false and misleading statements concerning Tyco's restructuring and merger reserves:

In the nine months ended June 30, 2000, the Company established restructuring and other non-recurring reserves of $35.9 million, of which $7.3 million is included in cost of sales, primarily related to the restructuring activities in AMP's Brazilian operations and wireless communications business, charges associated with USSC's suture business and the exiting of USSC's interventional cardiology business. At September 30, 1999, there existed merger, restructuring and other non-recurring reserves of $399.3 million. During the nine months ended June 30, 2000, the Company paid out $116.4 million in cash and incurred $50.5 million in non-cash charges that were charged against these reserves. Also in the nine months ended June 30, 2000, the Company

determined that $117.2 million of merger, restructuring and other non-recurring reserves established in prior years was not needed and recorded a credit of $110.9 million to the merger, restructuring and other non-recurring charges line item and a credit of $6.3 million to the cost of sales line item in the Consolidated Statement of Operations. The changes in estimates of the restructuring plan at AMP were attributable primarily to increased demand for certain of AMP's products which was not anticipated at the time of the merger and to recent acquisitions such as Siemens EC. Therefore, the Company has determined not to close several facilities and not to terminate approximately 3,000 employees, the costs of which were provided for in previous AMP restructuring plans. In addition, certain restructuring activities at AMP were completed for amounts lower than originally anticipated. The changes in estimates of the Company's 1997 restructuring plans and the USSC restructuring plans were due primarily to the completion of activities for amounts lower than originally recorded. At June 30, 2000, there remained $151.1 million of merger, restructuring and other non-recurring reserves on the Company's Consolidated Balance Sheet, of which $117.6 million is included in accrued expenses and other current liabilities and $33.5 million is included in other long-term liabilities.

442.    Those representations were materially false and misleading because Defendants

failed to disclose that they manipulated Tyco's accounting reserves - particularly those related

to the US Surgical and AMP transactions - in order to spring-load the Company's post-

acquisition financial results, as specifically alleged herein.

        **k.**      **Defendants' Materially False And Misleading
Representations In Tyco's August 2000 Registration
Statements And Related SEC Filings**

443.    On August 18, 2000, Tyco filed a Form S-3 relating to the public offering and

sale of 4,703,999 shares of Tyco common stock issuable upon exercise of stock options held

by Kozlowski and defendant Swartz's family partnership, the KMS Family Partnership L.P.

(the "August 2000 S-3(1)"). That document was signed by defendants Swartz, Kozlowski

and Walsh.

444.    Because the August 2000 S-3(1) incorporates the following documents by

reference, it contains the materially false and misleading statements set forth in those

documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000 10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

445.     On September 12, 2000, Tyco filed with the SEC a Prospectus (the "September 2000 Prospectus") relating to the offering described in the August 2000 S-3(1). Because the September 2000 Prospectus incorporated by reference the same documents that were incorporated by reference in the August 2000 S-3 (1), both SEC filings contained the materially false and misleading representations set forth in the incorporated documents.

446.     On August 18, 2000, Tyco filed with the SEC a Form S-3 (the "August 2000 S-3(2)") for the registration of up to $2,500,000,000 of any of the following securities either separately or in units: debt securities, preference shares, depositary shares and common shares. Defendants Swartz, Kozlowski and Walsh signed the August 2000 S-3(2.

447.     On August 18, 2000, Tyco filed with the SEC a Form S-3 for the registration of $3,500,000,000 in debt securities of Tyco International Group S.A. (the "August 2000 S-3(3)"). That document was signed by defendants Swartz, Kozlowski and Walsh.

448.     On September 18, 2000, Tyco filed with the SEC a Prospectus relating to the offering described in the August 2000 S-3(3) (the "September 2000 Prospectus").

449.     On February 20, 2001, Tyco filed with the SEC a Prospectus Supplement (the "February 2001 Prospectus Supplement") to the September 2000 Prospectus.

450.     Because the August 2000 S-3(2), the August 2000 S-3(3), the September 2000 Prospectus and the February 2001 Prospectus Supplement incorporate by reference the same documents as the August 2000 S-3(1), those SEC filings contain the misrepresentations set forth in the incorporated documents.

451.     On June 5, 2001, Tyco filed a Prospectus Supplement to the September 2000 Prospectus (the "June 2001 Prospectus Supplement") with the SEC. Because the June 2001

Prospectus Supplement incorporated the following documents by reference, it contained the materially false and misleading statements set forth in those documents:  the 2000 10-K; the 2000 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000 10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

452.    On July 26, 2001, Tyco filed with the SEC a Prospectus Supplement (the "July 2001 Prospectus Supplement") to the September 2000 Prospectus. Because the July 2001 Prospectus Supplement incorporated by reference the same documents that were incorporated by reference in the August 2000 S-3(3), both SEC filings contained the materially misleading statements set forth in the incorporated documents.

453.    The July 2001 Prospectus Supplement also contained the following materially misleading representations concerning Tyco's financial results for the first three quarters of the Company's fiscal 2001:

> On July 18, 2001, Tyco announced its results for the third quarter of fiscal 2001, the three months ended June 30, 2001. Revenues for the quarter rose 25% to $9.29 billion compared with last year's $7.42 billion. Diluted earnings per share before extraordinary items for the third quarter of fiscal 2001 were $0.67, or $1.22 billion, compared to $0.58 or $997.3 million, in the third quarter of fiscal 2000. Net income before non-recurring and extraordinary items rose to $1.31 billion, an increase of 32% compared to $992.1 million last year. Diluted earnings per share before non-recurring and extraordinary items for the third fiscal quarter ended June 30, 2001 were $0.72, a 24% increase over earnings of $0.58 per diluted share in the third quarter of fiscal 2000.

454.    Those representations were materially false and misleading because Defendants failed to disclose that Tyco produced the reported results only by engaging in the accounting improprieties and manipulations specifically alleged herein.

### I. Defendants' False And Misleading Statements Concerning The Company's Financial Results For The Fiscal Quarter And Year Ended September 30, 2000

455.   On October 24, 2000, the Tyco Defendants issued a press release concerning the

Company's financial results for the fiscal quarter and year ended September 30, 2000.

Defendants falsely stated:

> Tyco International Ltd..... a diversified manufacturing and service company, reported today that diluted earnings per share for its fourth quarter ended September 30, 2000 were 64 cents, a 39 percent increase over earnings of 46 cents per share in its fourth quarter of 1999. Net income before extraordinary item rose to $1.10 billion, an increase of 40 percent compared to $782.7 million last year. Sales for the quarter rose 25 percent to $7.81 billion compared with last year's $6.22 billion. These results are before restructuring and other non-recurring credits, charges, gain and extraordinary item. After giving effect to restructuring and other non-recurring credits, charges and gain, diluted earnings per share before extraordinary item for the fourth quarter of fiscal 2000 were $1.12, or $1.91 billion, compared to 46 cents, or $780.8 million, in the fourth quarter of fiscal 1999.
>
> For fiscal 2000, income before restructuring and other non-recurring credits, charges, gain and extraordinary item rose to $3.73 billion, or $2.18 per diluted share, a 42 percent increase over last year's diluted per share earnings of $1.53. After giving effect to restructuring and other non-recurring credits, charges and gain, diluted earnings per share before extraordinary item were $2.64, or $4.52 billion for fiscal 2000 compared to 64 cents, or $1.07 billion, in fiscal 1999. Revenues for the twelve months increased to $28.93 billion, 29 percent higher than last year's $22.50 billion.

456.   On December 21, 2000, Tyco filed with the SEC its 10-K for the fiscal year ended

September 30, 2000 (the "2000 10-K"). Defendants Swartz, Kozlowski, and Walsh signed that

document.

457.   Defendants made the following materially false and misleading representation

concerning the Company's financial results in the 2000 10-K:

> Operating income improved in all segments in each of Fiscal 2000 and Fiscal 1999. The operating improvements are the result of both increased revenues in all segments and enhanced margins in all but one segment in Fiscal 2000. Increased revenues result from organic growth and from acquisitions that are accounted for under the purchase method of accounting.

458.    In addition, Defendants falsely stated:

The 49.6% increase in operating income, before certain credits (charges), in Fiscal 1999 compared with Fiscal 1998 was due to improved margins at AMP, the acquisition of Raychem, and higher sales volume at the Tyco Printed Circuit Group. The improved operating margins, before certain credits (charges), in Fiscal 1999 compared with Fiscal 1998 were primarily due to the implementation of AMP's profit improvement plan, which was initiated in the fourth quarter of Fiscal 1998, cost reduction programs associated with the AMP merger, a pension curtailment/settlement gain and the acquisition of Raychem.

459.    With respect to the results generated by the Company's Fire and Security business

segment, Defendants falsely stated:

The 9.8% increase in sales in Fiscal 2000 over Fiscal 1999 resulted primarily from increased sales in the worldwide electronic security services business and higher sales volume in fire protection operations in North America, Asia and Australia. The increases were due primarily to a higher volume of recurring service revenues and, to a lesser extent, the effects of acquisitions in the security services business.

460.    On or about January 30, 2001, Tyco released its 2000 Annual Report to

Shareholders (the "2000 Annual Report").

461.    The 2000 Annual Report included a letter to Tyco shareholders signed by

Kozlowski that contained the following materially false and misleading description of the

financial results produced by Tyco during fiscal 2000:

For the seventh consecutive year, we increased revenues and earnings substantially. Revenues rose 29 percent to $28.9 billion and earnings grew $1.2 billion to $3.7 billion, a 46 percent increase over the prior year. Our diluted earnings per share increased 42 percent to $2.18. These are outstanding numbers, the result of our focus on lean, efficient management, continuous production improvement and aggressive expansion into new markets....

462.    The 2000 Annual Report also provided investors with the following materially

false and misleading description of the Company's fiscal 2000 financial results:

Sales increased 28.6% during Fiscal 2000 to $28,931.9 million from $22,496.5 million in Fiscal 1999. Sales in Fiscal 1999 increased 18.0% compared to Fiscal 1998. Income before extraordinary items was $4,520.1 million in Fiscal 2000, as compared to $1,067.7 million in Fiscal 1999 and $1,168.6 million in Fiscal 1998. Income before extraordinary items for Fiscal 2000 included an after-tax

111

net credit of $793.7 million ($1,484.7 million pre-tax) consisting of restructuring, non-recurring and impairment charges of $327.3 million ($424.2 million pre-tax) primarily for non-recurring claims related to a merged company and the exiting of USSC's interventional cardiology business, offset by a credit of $113.6 million ($148.9 million pre-tax) representing a revision of estimates of merger, restructuring and other non-recurring accruals and a gain of $1,007.4 million ($1,760.0 million pre-tax) on the issuance of common shares in connection with TyCom's initial public offering. Income before extraordinary items for Fiscal 1999 included an after tax net charge of $1,304.8 million ($1,542.7 million pre-tax) primarily related to the mergers with USSC and AMP and costs associated with AMP's profit improvement plan. Income before extraordinary items for Fiscal 1998 included an after-tax charge of $192.0 million ($256.9 million pre-tax) primarily related to AMP's profit improvement plan and costs incurred by USSC to exit certain businesses.

463.   The 2000 Annual Report also quoted the PWC Defendants' audit report, dated October 24, 2000 (except as to Note 25, which is dated as of December 4, 2000), concerning Tyco's 2000 and 1999 financial statements. As set forth herein, the PWC Defendants' opinion falsely stated that Tyco's financial statements were presented in conformity with GAAP, and that the PWC Defendants' audit was performed in accordance with GAAS.

464.   The foregoing representations concerning Tyco's financial results for the fiscal quarter and year ended September 30, 2000 were materially false and misleading because Defendants failed to disclose that Tyco produced the reported results only by engaging in the accounting improprieties and manipulations specifically alleged herein.

465.   The 2000 10-K also set forth the following materially misleading representations concerning the merger and restructuring reserves established by Tyco:

In Fiscal 2000, we made acquisitions that were accounted for under the purchase accounting method at an aggregate cost of $5,162.0 million. Of this amount, $4,246.5 million was paid in cash (net of cash acquired), $671.4 million was paid in the form of Tyco common shares, and we assumed $244.1 million in debt. In connection with these acquisitions, we established purchase accounting reserves of $426.2 million for transaction and integration costs. At the beginning of Fiscal 2000, purchase accounting reserves were $570.3 million as a result of purchase accounting transactions made in prior years. During Fiscal 2000, we paid out $544.2 million in cash and incurred $52.1 million in non-cash charges against the reserves established during and prior to Fiscal 2000. Also in Fiscal 2000, we determined that $117.8 million of purchase accounting reserves related to

acquisitions made prior to Fiscal 2000 were not needed and reversed that amount against goodwill. At September 30, 2000, there remained $372.6 million in purchase accounting reserves on our Consolidated Balance Sheet, of which $349.2 million is included in current liabilities and $23.4 million is included in long-term liabilities.

466.    Those statements were materially false and misleading because Defendants failed

to disclose their practice of aggressively inflating Tyco's restructuring and merger reserves in

order to spring-load the Company's future reported results.

### m.    Defendants' Materially False And Misleading Representations In The October 2000 S-8

467.    On October 23, 2000, Tyco filed with the SEC a Form S-8 for the registration of

1,000,000 shares of Tyco common stock relating to the Investment Plan for Employees of

Mallinckrodt Inc. (the "October 2000 S-8"). Defendants Swartz, Kozlowski and Walsh signed

that document.

468.    Because the October 2000 S-8 incorporated the following documents by

reference, it contained the same materially false and misleading statements as those documents:

the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000

10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

### n.    Defendants' Materially False And Misleading Representations In The November 2000 S-4/A

469.    On November 14, 2000, Tyco filed with the SEC a Form S-4/A (the "November

2000 S-4/A") that amended an S-4 filed on October 18, 2000 and an S-4/A filed on October 20,

2000 that related to the proposed merger between InnerDyne and a subsidiary of Tyco.

Defendant Swartz for himself and for defendants Kozlowski and Walsh signed he November

2000 S-4/A.

470.    Because the November 2000 S-4/A incorporates the following documents by

reference, it contains the same materially false and misleading statements set forth in those

113

documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A,

the May 2000 10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

471.    In addition, the November 2000 S-4/A sets forth the following materially false

and misleading description of the financial results produced by Tyco for the fiscal year and

quarter ended September 30, 2000:

> On October 24, 2000, Tyco announced its results for the fourth quarter of fiscal
> 2000, the three months ended September 30, 2000. For the fiscal 2000 fourth
> quarter, income before restructuring and other non-recurring credits, charges, gain
> and extraordinary items was $1.10 billion, or $0.64 per diluted share, as compared
> to $782.7 million, or $0.46 per diluted share, for the quarter ended September 30,
> 1999. After giving effect to restructuring and other non-recurring credits, charges,
> gain and extraordinary items, net income for the fourth quarter of fiscal 2000 was
> $1.91 billion, or $1.12 per diluted share, compared to $780.5 million, or $0.46
> per diluted share, in the fourth quarter of fiscal 1999. Results in the fourth
> quarter of fiscal 2000 included a $1.76 billion pretax gain from the initial public
> offering of TyCom Ltd. Fourth quarter sales rose 25% to $7.81 billion, up from
> $6.22 billion a year ago.

> For fiscal 2000, revenues increased to $28.93 billion, up 29% from revenues of
> $22.50 billion in fiscal 1999. Income before restructuring and other non-
> recurring credits, charges, gain and extraordinary items rose to $3.73 billion, or
> $2.18 per diluted share, a 42% increase over $1.53 per diluted share in fiscal
> 1999. After giving effect to restructuring and other non-recurring credits,
> charges, gain and extraordinary items, net income for fiscal 2000 was $4.52
> billion, or $2.64 per diluted share, compared to $1.02 billion, or $0.61 per
> diluted share, in fiscal 1999.

472.    Those representations were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

### o.    Defendants' Materially False And Misleading Statements In The November 2000 S-3 And Its Amendment

473.    On November 9, 2000, Tyco filed a Form S-3 for the registration of 2,180,010

shares of Tyco common stock relating to Tyco's October 26, 2000 acquisition of CIGI

Investment Group, Inc. (the "November 2000 S-3").  Defendants Swartz, Kozlowski and

Walsh signed the November 2000 S-3.  Because the November 2000 S-3 incorporates the

following documents by reference, it contains the same materially false and misleading

statements as those documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the

June 2000 10-Q/A, the May 2000 10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

474.    The November 2000 S-3 also includes the following materially misleading

description of Tyco's financial results for the quarter and fiscal year ended September 30,

2000:

> On October 24, 2000, Tyco announced its preliminary unaudited results for the
> fourth quarter of fiscal 2000, the three months ended September 30, 2000. For
> the fiscal 2000 fourth quarter, income before restructuring and other non-
> recurring credits, charges, gain and extraordinary item was $1.10 billion, or
> $0.64 per share on a fully diluted basis, as compared to $782.7 million, or $0.46
> per share on a fully diluted basis, for the quarter ended September 30, 1999.
> After giving effect to restructuring and other non-recurring credits, charges, gain
> and extraordinary item, net income for the fourth quarter of fiscal 2000 was
> $1.91 billion, or $1.12 per diluted share, compared to $780.5 million, or $0.46
> per diluted share, in the fourth quarter of fiscal 1999. Results in the fourth
> quarter included a $1.76 billion pretax gain from the initial public offering of
> TyCom Ltd. Fourth quarter sales rose 25% to $7.81 billion, up from $6.22
> billion a year ago.
>
> For fiscal 2000, revenues increased to $28.93 billion, up 29% from revenues of
> $22.50 billion in fiscal 1999. Income before restructuring and other non-
> recurring credits, charges, gain and extraordinary items rose to $3.73 billion, or
> $2.18 per diluted share, a 42% increase over $1.53 in fiscal 1999. After giving
> effect to restructuring and other non-recurring credits, charges, gain and
> extraordinary item, net income for fiscal 2000 was $4.52 billion, or $2.64 per
> diluted share, compared to $1.02 billion, or $0.61 per diluted share, in fiscal
> 1999.

475.    Those representations were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

476.    On November 30, 2000, Tyco filed with the SEC a Form S-3/A (the "November

2000 S-3/A") that amended the November 2000 S-3. Defendant Swartz for himself and for

defendant Kozlowski signed the November 2000 S-3/A. Because the November 2000 S-3/A

incorporates by reference the same documents as the November 2000 S-3, both documents

contain the materially false and misleading statements set forth in the incorporated documents.

477.    The November 2000 S-3/A also included the following materially false and

misleading description of the financial results produced by Tyco for the fiscal quarter and year

ended September 30, 2000:

> On October 24, 2000, Tyco announced its results for the fourth quarter of fiscal
> 2000, the three months ended September 30, 2000. For the fiscal 2000 fourth
> quarter, income before restructuring and other non-recurring credits, charges,
> gain and extraordinary items was $1.10 billion, or $0.64 per diluted share, as
> compared to $782.7 million, or $0.46 per diluted share, for the quarter ended
> September 30, 1999. After giving effect to restructuring and other non-recurring
> credits, charges, gain and extraordinary items, net income for the fourth quarter
> of fiscal 2000 was $1.91 billion, or $1.12 per diluted share, compared to $780.5
> million, or $0.46 per diluted share, in the fourth quarter of fiscal 1999. Results
> in the fourth quarter of fiscal 2000 included a $1.76 billion pretax gain from the
> initial public offering of TyCom Ltd. Fourth quarter sales rose 25% to $7.81
> billion, up from $6.22 billion a year ago.
>
> For fiscal 2000, revenues increased to $28.93 billion, up 29% from revenues of
> $22.50 billion in fiscal 1999. Income before restructuring and other non-
> recurring credits, charges, gain and extraordinary items rose to $3.73 billion, or
> $2.18 per diluted share, a 42% increase over $1.53 per diluted share in fiscal
> 1999. After giving effect to restructuring and other non-recurring credits,
> charges, gain and extraordinary items, net income for fiscal 2000 was $4.52
> billion, or $2.64 per diluted share, compared to $1.02 billion or $0.61 per
> diluted share, in fiscal 1999.

478.    Those representations were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

### p.    Defendants' Materially False And Misleading Representations In The December 2000 S-3 And Related SEC Filings

479.    On December 8, 2000, Tyco filed with the SEC a Form S-3 for the registration

of $4,657,500,000 in Liquid Yield Option Notes due 2020 (the "December 2000 S-3").

Defendants Swartz, Kozlowski and Walsh signed the December 2000 S-3. Because the

December 2000 S-3 incorporates the following documents by reference, it contains the same materially false and misleading statements as those documents: the 1999 10-K, the 1999 10-K/A, the February 2000 10-Q, the June 2000 10-Q/A, the May 2000 10-Q, the June 2000 10-Q/A(2) and the August 2000 10-Q.

480.    On December 15, 2000, Tyco filed a Form S-3/A (the "December 2000 S-3/A") that amended the December 2000 S-3. Defendant Swartz for himself and for defendants Kozlowski and Walsh signed the December 2000 S-3/A. Because the December 2000 S-3/A incorporates by reference the same documents as the December 2000 S-3, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

481.    On December 19, 2000, Tyco filed with the SEC a Prospectus for the offering described in the December 2000 S-3 (the "December 2000 Prospectus"). Because the December 2000 Prospectus incorporates by reference the same documents that were incorporated by reference in the December 2000 S-3, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

482.    The December 2000 S-3, its amendment and the December 2000 Prospectus all set forth the following materially false and misleading representations concerning Tyco's financial results for the fiscal quarter and year ended September 30, 2000:

> On October 24, 2000, Tyco announced its results for the fourth quarter of fiscal 2000, the three months ended September 30, 2000. For the fiscal 2000 fourth quarter, income before restructuring and other non-recurring credits, charges, gain and extraordinary items was $1.10 billion, or $0.64 per diluted share, as compared to $782.7 million, or $0.46 per diluted share, for the quarter ended September 30, 1999. After giving effect to restructuring and other non-recurring credits, charges, gain and extraordinary items, net income for the fourth quarter of fiscal 2000 was $1.91 billion, or $1.12 per diluted share, compared to $780.5 million, or $0.46 per diluted share, in the fourth quarter of fiscal 1999. Results in the fourth quarter of fiscal 2000 included a $1.76 billion pretax gain from the initial public offering of TyCom Ltd. Fourth quarter sales rose 25% to $7.81 billion, up from $6.22 billion a year ago.

For fiscal 2000, revenues increased to $28.93 billion, up 29% from revenues of $22.50 billion in fiscal 1999. Income before restructuring and other non-recurring credits, charges, gain and extraordinary items rose to $3.73 billion, or $2.18 per diluted share, a 42% increase over $1.53 per diluted share in fiscal 1999. After giving effect to restructuring and other non-recurring credits, charges, gain and extraordinary items, net income for fiscal 2000 was $4.52 billion, or $2.64 per diluted share, compared to $1.02 billion or $0.61 per diluted share, in fiscal 1999.

483.   Those representations were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

484.   In addition, both the December 2000 S-3 and its amendment include the

following materially false and misleading representations concerning Tyco's restructuring and

merger charges:

Earnings for the nine months ended June 30, 2000, the years ended September 30, 1999 and 1998, the nine months ended September 30, 1997 and the years ended December 31, 1996 and 1995 include net merger, restructuring and other non-recurring (credits) charges of $(81.3) million (of which net charges of $1.0 million are included in cost of sales), $1,035.2 million (of which $106.4 million is included in cost of sales), $256.9 million, $947.9 million, $344.1 million and $97.1 million, respectively. Earnings also include charges for the impairment of long-lived assets of $99.0 million, $507.5 million, $148.4 million, $744.7 million and $8.2 million in the nine months ended June 30, 2000, the year ended September 30, 1999, the nine months ended September 30, 1997 and the years ended December 31, 1996 and 1995, respectively.

485.   Those statements were materially false and misleading because Defendants

failed to disclose their practice of aggressively inflating Tyco's restructuring and merger

reserves in order to spring-load the Company's future reported results.

### q.   Defendants' Materially Misleading Representations And Omissions In The January 2001 S-8

486.   On January 31, 2001, Tyco filed with the SEC a Form S-8 for the registration of

200,000 shares of Tyco common stock (the "January 2001 S-8"). Defendants Swartz,

Kozlowski and Walsh signed that document. Because the January 2001 S-8 incorporates by

reference the 2000 10-K, the January 2001 S-8 contains the materially false and misleading

statements set forth in the 2000 10-K.

> **r.    Defendants' Materially False And Misleading
> Representations Concerning Tyco's Financial Results For The
> Quarter Ended December 31, 2000**

487.    On January 17, 2001, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended December 31, 2000.  In that press release,

Defendants falsely stated:

> Tyco International Ltd. . . . a diversified manufacturing and service company,
> reported today that diluted earnings per share for its first quarter ended
> December 31, 2000 were 57 cents, a 24 percent increase over earnings of 46
> cents per share in its first quarter of fiscal 2000. Net income before
> extraordinary items and cumulative effect of accounting change rose to $1.01
> billion, an increase of 28 percent compared to $784.3 million last year. Sales for
> the quarter rose 21 percent to $8.02 billion compared with last year's $6.64
> billion. These results are before non-recurring items. After giving effect to such
> items, diluted earnings per share before extraordinary items and cumulative
> effect of accounting change for the first quarter of fiscal 2001 were 57 cents, or
> $1.01 billion, compared to 44 cents, or $757.2 million, in the first quarter of
> fiscal 2000.

488.    On February 13, 2001, Tyco filed with the SEC Tyco's Form 10-Q for the

quarter ended December 31, 2000 (the "February 2001 10-Q").  Defendant Swartz signed the

February 2001 10-Q.

489.    In the February 2001 10-Q, Defendants falsely described the Company's results

for the quarter as follows:

> Sales increased 20.8% during the quarter ended December 31, 2000 to $8,020.3
> million from $6,638.8 million in the quarter ended December 31, 1999. Income
> before extraordinary item and cumulative effect of accounting change was
> $1,009.2 million in the quarter ended December 31, 2000, as compared to
> $757.2 million in the quarter ended December 31, 1999. Income before
> cumulative effect of accounting change for the quarter ended December 31,
> 2000 included an after-tax net credit of $3.9 million ($175.6 million pre-tax
> credit) consisting of the write-off of purchased in-process research and
> development, restructuring and other non-recurring charges, impairment charges
> and a non-recurring charge related to the write-up of inventory under purchase
> accounting which is included in cost of sales, totaling $218.3 million ($234.8

million pre-tax charge) primarily related to the acquisition of Mallinckrodt Inc. ("Mallinckrodt"); offset by a net gain on sale of businesses of $222.2 million ($410.4 million pre-tax gain) principally related to the sale of ADT Automotive. Income before extraordinary item for the quarter ended December 31, 1999 included an after-tax net charge of $27.1 million ($26.4 million pre-tax charge) consisting of restructuring and impairment charges of $97.5 million ($121.1 million pre-tax charge) primarily related to the exiting of USSC's international cardiology business, offset by a credit of $70.4 million ($94.7 million pre-tax credit) representing a revision of estimates of merger, restructuring and other non-recurring accruals.

490. Defendants' representations concerning the financial results generated by Tyco

for the quarter ended December 31, 2000 were materially false and misleading because

Defendants failed to disclose that Tyco produced the reported results only by engaging in the

accounting improprieties and manipulations specifically alleged herein.

491. In addition, Defendants delivered the following materially false and misleading

description of the Company's merger and restructuring reserves in the February 2001 10-Q:

> During the quarter ended December 31, 2000, we recorded restructuring and other non-recurring charges of $18.1 million primarily related to an environmental remediation project and the closure of a manufacturing plant. Additionally, we incurred a non-recurring charge of $25.0 million related to the write-up of inventory under purchase accounting. The $25.0 million charge has been included in cost of sales. At September 30, 2000, there existed merger, restructuring and other non-recurring reserves of $365.9 million. During the quarter ended December 31, 2000, we paid out $11.3 million in cash and incurred $1.7 million in non-cash charges that were charged against these reserves. At December 31, 2000, there remained $371.0 million of merger, restructuring and other non-recurring reserves in our Consolidated Balance Sheet, of which $341.3 million is included in current liabilities and $29.7 million is included in long-term liabilities.

492. That description of the Company's merger and restructuring reserves was

materially false and misleading because, as is specifically alleged herein, Defendants concealed

from investors the manner in which they manipulated the Company's reserves to inflate its

reported results.

120

### s. Defendants' Materially False And Misleading Statements In The February 2001 S-4 And Related SEC Filings

493. On February 23, 2001, Tyco filed with the SEC a Form S-4 relating to Tyco's proposed offer to issue 9,415,481 shares of Tyco stock upon consummation of a merger with Scott Technologies, Inc. (the "February 2001 S-4") . Defendants Kozlowski, Swartz and Walsh signed the February 2001 S-4. Because the February 2001 S-4 incorporates the following documents by reference, it contains the same materially false and misleading statements set forth in those documents: the 2000 10-K; and the February 2001 10-Q.

494. On March 30, 2001, Tyco filed with the SEC a Form S-4/A (the "March 2001 S-4/A") and a Prospectus (the "March 2001 Prospectus") relating to the proposed merger between Scott Technologies, Inc. and Tyco. Because the March 2001 S-4/A and the March 2001 Prospectus each incorporate by reference the same documents as the February 2001 S-4, all of those SEC filings contain the materially false and misleading representations set forth in the incorporated documents.

### t. Defendants' Materially False And Misleading Representations In The March 2001 S-3

495. On March 16, 2001, Tyco filed with the SEC a Form S-3 related to the February 12, 2001 issuance of $3,035,000,000 of Zero Coupon Convertible Debentures due February 12, 2021 (the "March 2001 S-3"). Defendants Kozlowski, Swartz and Walsh signed the February 2001 S-4 was signed by d. Because the March 2001 S-3 incorporates by reference the 2000 10-K and the February 2001 10-Q, it contains the materially false and misleading statements set forth in those documents.

496. On April 3, 2001, Tyco filed with the SEC a Prospectus related to the offering described in the March 2001 S-3 (the "April 2001 Prospectus"). The April 2001 Prospectus incorporates by reference the same documents that were incorporated by reference in the March

2001 S-3, and therefore contains the materially false and misleading statements set forth in the incorporated documents.

> **u.  Defendants' Materially False And Misleading Representations In The March 2001 CIT S-4 And Related SEC Filings**

497.    On March 29, 2001, Tyco filed with the SEC a Form S-4 relating to a proposed merger between CIT and a Tyco subsidiary (the "March 2001 CIT S-4"). Defendants Kozlowski, Swartz and Walsh signed the 2000 10-K and the February 2001 10-Q. Because the March 2001 CIT S-4 incorporates the 2000 10-K and the February 2001 10-Q by reference, it contains the materially false and misleading statements set forth in those documents.

498.    On April 13, 2001, Tyco filed with the SEC a Form S-4/A (the "April 2001 CIT S-4/A") that amended the March 2001 CIT S-4. Because the April 2001 CIT S-4/A incorporates by reference the same documents as the March 2001 CIT S-4, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

499.    On May 24, 2001, Tyco filed with the SEC a Post-Effective Amendment No. 1 to Form S-4 relating to the proposed merger between CIT and a Tyco subsidiary (the "May 2001 Post-Effective Amendment"). Defendant Swartz for himself and for defendants Kozlowski and Walsh signed that document. Because the May 2001 Post-Effective Amendment incorporates the following documents by reference, it contains the materially false and misleading statements set forth in those documents: the 2000 10-K, the February 2001 10-Q and the May 2001 10-Q.

500.    On April 24, 2001, Tyco filed with the SEC a prospectus relating to the proposed merger between CIT and a Tyco subsidiary (the "April 2001 CIT Prospectus"). Because the April 2001 CIT Prospectus incorporates by reference the same documents as the March 2001 CIT S-4, both SEC filings contain the materially false and misleading statements set forth in the incorporated documents.

       **v.**      **Defendants' Materially False And Misleading Representations Concerning Tyco's Financial Results For The Quarter Ended March 31, 2001**

501.    On April 18, 2001, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended March 31, 2001. In that press release,

Defendants falsely stated:

> Tyco International Ltd. . . . a diversified manufacturing and service company, reported today that diluted earnings per share for its second quarter ended March 31, 2001 were 65 cents, a 30 percent increase over earnings of 50 cents per share in its second quarter of fiscal 2000. Net income before extraordinary items rose to $1.16 billion, an increase of 35 percent compared to $853.6 million last year. Sales for the quarter rose 26 percent to $8.9 billion compared with last year's $7.07 billion. These results are before non-recurring items. After giving effect to such items, diluted earnings per share before extraordinary items for the second quarter of fiscal 2001 were 65 cents, or $1.15 billion, compared to 50 cents, or $855.5 million, in the second quarter of fiscal 2000.

> For the first half of fiscal 2001, income before non-recurring items, extraordinary items and cumulative effect of accounting change rose to $2.16 billion, or $1.22 per diluted share, a 27 percent increase over last year's diluted earnings per share of 96 cents. After giving effect to non-recurring items, diluted earnings per share before extraordinary items and cumulative effect of accounting change were $1.22, or $2.16 billion, for the first half of fiscal 2001 compared to 94 cents, or $1.61 billion, in fiscal 2000. Revenues for the first half of fiscal 2001 increased to $16.92 billion, 23 percent higher than last year's $13.71 billion.

502.    On May 11, 2001, Tyco filed its Form 10-Q for the quarter ended March 31, 2001

(the "May 2001 10-Q") with the SEC. Defendant Swartz signed that document.

503.    Defendants made the following materially false and misleading representations

concerning the Company's quarterly results in the May 2001 10-Q:

> Sales increased 25.9% during the quarter ended March 31, 2001 to $8,898.4 million from $7,070.0 million in the quarter ended March 31, 2000. Income before extraordinary items was $1,147.3 million in the quarter ended March 31, 2001, as compared to $855.5 million in the quarter ended March 31, 2000. Income before extraordinary items for the quarter ended March 31, 2001 included an after-tax net charge of $8.0 million ($15.2 million pre-tax charge) consisting of the following: (i) restructuring and other non-recurring charges and impairment charges totaling $128.4 million ($178.1 million pre-tax charge) primarily related to certain electronics, flow control and healthcare businesses; (ii) a net loss on sale of businesses and investments of $2.5 million ($3.9 million pre-tax loss); and

(iii) a non-recurring credit of $122.9 million ($166.8 million pre-tax credit) related to the settlement of litigation in which Tyco was provided with an ongoing OEM arrangement valued at $166.8 million. Income before extraordinary items for the quarter ended March 31, 2000 included an after-tax net credit of $1.9 million ($1.8 million pre-tax credit) consisting of a credit of $9.5 million ($12.7 million pre-tax credit) representing a revision of estimates of merger, restructuring and other non-recurring accruals, offset by restructuring charges of $7.6 million ($10.9 million pre-tax charge) primarily related to AMP' operations.

504.    Defendants' representations concerning the financial results generated by Tyco

for the quarter ended March 31, 2001 were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

505.    The May 2001 10-Q also delivered the following materially misleading

description of the Company's merger and restructuring reserves:

> During the six months ended March 31, 2001, we recorded restructuring and other non-recurring charges of $164.5 million, of which $32.4 million was included in cost of sales, primarily related to the closure of several manufacturing plants, sales offices, warehouses and administrative offices and an environmental remediation project. In addition, we incurred a non-recurring charge of $39.0 million related to the write-up of inventory under purchase accounting, which has been included in cost of sales. We also determined that $166.8 million of non-recurring charges established in the prior year were not needed due to the settlement of litigation. At September 30, 2000, there existed merger, restructuring and other non-recurring reserves of $365.9 million. During the six months ended March 31, 2001, we paid out $55.6 million in cash and incurred $35.7 million in non-cash charges that were charged against these reserves. At March 31, 2001, there remained $272.3 million of merger, restructuring and other non-recurring reserves in our Consolidated Balance Sheet, of which $231.6 million is included in current liabilities and $40.7 million is included in long-term liabilities.

506.    Those representations were materially false and misleading because, as is

specifically alleged herein, Defendants failed to disclose that they improperly manipulated the

Company's accounting reserves in order to inflate Tyco's reported financial results.

### w. Defendants' Materially False And Misleading Representations In The June 2001 S-8

507.    On June 7, 2001, Tyco filed with the SEC a Form S-8 related to the issuance

of securities to CIT in connection with the proposed merger between CIT and Tyco (the

"June 2001 S-8"). Defendants Kozlowski, Swartz and Walsh signed that document. Because

the June 2001 S-8 incorporates the following documents by reference, it contains the

materially false and misleading statements set forth in those documents: the 2000 10-K, the

February 2001 10-Q and the May 2001 10-Q.

### x. Defendants' Materially False And Misleading Representations In The July 2001 S-3

508.    On July 24, 2001, Tyco filed with the SEC a Form S-3 relating to the

registration of $300,000,000 of debt securities of a Tyco subsidiary (the "July 2001 S-3").

Defendant Swartz for himself and for Kozlowski and Walsh signed that document. Because

the July 2001 S-3 incorporates the August 2000 S-3(2) by reference, both SEC filings contain

the materially false and misleading statements set forth in the August 2000 S-3(2) and the

documents it incorporates by reference.

### y. Defendants' Materially False And Misleading Representations Concerning The Company's Results For The Quarter Ended June 30, 2001

509.    On July 18, 2001, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended June 30, 2001. In that press release, the

Tyco Defendants made the following materially misleading representations concerning the

Company's financial results for the quarter:

> Tyco International Ltd. . . . a diversified manufacturing and service company,
> reported today that diluted earnings per share for its third quarter ended June
> 30, 2001 were 72 cents, a 24 percent increase over earnings of 58 cents per
> share for the same quarter last year. Net income before extraordinary items
> rose to $1.3 billion, an increase of 32 percent compared to $992.1 million last
> year. Revenues for the quarter rose 25 percent to $9.3 billion compared with last

year's $7.4 billion. These results are before non-recurring items. After giving effect to such items, diluted earnings per share before extraordinary items for the third quarter of fiscal 2001 were 67 cents, or $1.2 billion, compared to 58 cents, or $997.3 million, in the third quarter of fiscal 2000.

Income before non-recurring items, extraordinary items and cumulative effect of accounting change for the nine months ended June 30, 2001 rose to $3.5 billion, or $1.94 per diluted share, a 32 percent increase over last year's first nine months' earnings of $2.6 billion, or $1.54 per diluted share. Revenues for the first nine months of fiscal 2001 increased to $26.2 billion, 24 percent higher than last year's first nine months' revenues of $21.1 billion. After giving effect to non-recurring items, diluted earnings per share before extraordinary items and cumulative effect of accounting change were $1.89, or $3.4 billion, for the first nine months of fiscal 2001 compared to $1.52, or $2.6 billion, in fiscal 2000.

510.    On August 13, 2001, Tyco filed its Form 10-Q for the quarter ended June 30,

2001 (the "August 2001 10-Q") with the SEC. Defendant Swartz signed that document.

511.    The Tyco Defendants made the following materially false and misleading

representations concerning the Company's financial results for the third fiscal quarter in the

August 2001 10-Q:

Operating income, before certain (charges) credits, improved in all segments in both the quarter and nine months ended June 30, 2001 as compared to the quarter and nine months ended June 30, 2000, with the exception of the Telecommunications segment discussed below. The operating income improvements are the result of increased revenues resulting from organic growth and from acquisitions that are accounted for under the purchase method of accounting. We enhance our margins through improved productivity and cost reductions in the ordinary course of business, unrelated to acquisition or divestiture activities.

512.    Defendants' representations concerning the financial results generated by Tyco

for the quarter ended June 30, 2001were materially false and misleading because Defendants

failed to disclose that Tyco produced the reported results only by engaging in the accounting

improprieties and manipulations specifically alleged herein.

513.    The Tyco Defendants also made the following materially false and misleading

statements concerning the Company's restructuring and merger reserves in the August 2001

10-Q:

During the nine months ended June 30, 2001, we recorded restructuring and other non-recurring charges of $214.7 million, of which $39.8 million was included in cost of sales, primarily related to the closure of several manufacturing plants, sales offices, warehouses and administrative offices and an environmental remediation project. In addition, we incurred a non-recurring charge of $39.0 million related to the write-up of inventory under purchase accounting, which has been included in cost of sales. We also determined that $166.8 million of non-recurring charges established in the prior year were not needed due to the settlement of litigation. At September 30, 2000, there existed merger, restructuring and other non-recurring reserves of $365.9 million. During the nine months ended June 30, 2001, we paid out $113.5 million in cash and incurred $86.2 million in non-cash charges that were charged against these reserves. At June 30, 2001, there remained $214.1 million of merger, restructuring and other non-recurring reserves in Tyco Industrial's Consolidated Balance Sheet, of which $183.8 million is included in current liabilities and $30.3 million is included in long-term liabilities.

514.    That description of the Company's reserves was materially false and misleading because, as is specifically alleged herein, Defendants failed to disclose that they improperly manipulated the Company's reserves in order to inflate Tyco's reported financial results.

z.    **Defendants' Materially False And Misleading Representations In The August 2001 S-4 And Related SEC Filings**

515.    On August 24, 2001, Tyco filed with the SEC a Form S-4 relating to a proposed merger between Sensormatic and a Tyco subsidiary (the "August 2001 S-4"). Defendants Swartz, Kozlowski and Walsh signed that document. Because the August 2001 S-4 incorporates the following documents by reference, it contains the materially false and misleading statements set forth in those documents: the 2000 10-K, the February 2001 10-Q, the May 2001 10-Q and the August 2001 10-Q.

516.    On September 13, 2001, Tyco filed with the SEC a Form S-4/A (the "September 2001 S-4/A") that amended the August 2001 S-4. Defendant Swartz for himself and for defendants Kozlowski and Walsh signed the September 2001 S-4/A. Because the September 2001 S-4/A incorporates by reference the same documents that were incorporated by reference

127

in the August 2001 S-4, both SEC filings contain the materially misleading statements set forth
in those incorporated documents.

517.    On September 25, 2001, Tyco filed with the SEC a prospectus relating to the
proposed merger between Sensormatic and a Tyco subsidiary (the "September 2001
Prospectus"). Because the September 2001 Prospectus incorporates by reference the same
documents that were incorporated by reference in the August 2001 S-4, both SEC filings
contain the materially misleading statements set forth in those incorporated documents.

> **aa.     Defendants' Materially False And Misleading
> Representations In The August 2001 S-3 And Related SEC
> Filings**

518.    On August 28, 2001, Tyco filed with the SEC a Form S-3 for the registration of
$6 billion in yet to be determined senior and subordinated debt securities (the "August 2001 S-
3"). Defendants Swartz, Kozlowski, and Walsh signed the August 2001 S-3. Because the
August 2001 S-3 incorporated the following documents by reference, it contained the
materially false and misleading statements set forth in those documents:  the 2000 10-K, the
February 2001 10-Q, the May 2001 10-Q and the August 2001 10-Q.

519.    Tyco filed with the SEC a Prospectus dated August 31, 2001 in connection with
the offering described in the August 2001 S-3 (the "August 2001 Prospectus").

520.    On October 25, 2001, Tyco filed a Prospectus Supplement to the August 2001
Prospectus (the "October 2001 Prospectus Supplement"). Because the October 2001
Prospectus Supplement incorporated by reference the same documents that were incorporated
by reference in the August 2001 S-3, both SEC filings contained the materially false and
misleading statements set forth in those incorporated documents.

521.    Defendants made the following materially false and misleading representations

concerning Tyco's financial results for the fiscal year and quarter ended September 31, 2001 in

the October 2001 Prospectus Supplement:

> Revenues before non-recurring items ... for the quarter rose 29% to $10.08
> billion compared with last year's $7.80 billion. Diluted earnings per share before
> non-recurring items, extraordinary items and the adoption of SAB 101 for the
> fourth quarter fiscal 2001 were $0.86, a 34% increase over earnings of $0.64 per
> diluted share in the fourth quarter fiscal 2000. After giving effect to such items,
> revenues for the fourth quarter fiscal 2001 were $10.01 billion compared to
> $9.57 billion in the fourth quarter fiscal 2000 and diluted earnings per share for
> the fourth quarter of fiscal 2001 were $0.70 per share, compared to $1.12 diluted
> earnings per share in the fourth quarter of fiscal 2000.

*    *    *

> Revenues before non-recurring items and the adoption of SAB 101 for the year
> ended September 30, 2001 increased to $36.29 billion, 25% higher than last
> year's $28.93 billion. Diluted earnings per share before non-recurring charges
> and credits and extraordinary items, and the adoption of SAB 101, for the year
> rose to $2.81 per diluted share, or $5.15 billion, a 29% increase over last year's
> diluted per share earnings of $2.18, or $3.73 billion.

522.    That description of the Company's financial results was materially false and

misleading because Defendants failed to disclose that they produced the reported results only

by engaging in the unlawful and improper accounting practices alleged herein.

### bb.    Defendants' Materially False And Misleading Representations In The October 2001 S-4 And Related SEC Filings

523.    On October 23, 2001, Tyco filed with the SEC a Form S-4 relating to a

proposed business combination between TyCom and a subsidiary of Tyco wherein TyCom

would become a wholly-owned subsidiary of Tyco (the "October 2001 S-4"). The October

2001 S-4 was signed by defendants Swartz, Kozlowski and Walsh. Because the October 2001

S-4 incorporates the following documents by reference, it contains the materially false and

misleading statements set forth in those documents: the 2000 10-K; the 2000 10-K/A; the

February 2001 10-Q; the May 2001 10-Q; and the August 2001 10-Q.

524.     Defendants made the following materially false and misleading representations

concerning Tyco's financial results for the quarter and fiscal year ended September 31, 2001 in

the October 2001 S-4:

> Revenues before non-recurring items . . . for the quarter rose 29% to $10.08
> billion compared with last year's $7.80 billion. Diluted earnings per share
> before non-recurring items, extraordinary items and the adoption of SAB 101
> for the fourth quarter fiscal 2001 were $0.86, a 34% increase over earnings of
> $0.64 per diluted share in the fourth quarter fiscal 2000. After giving effect to
> such items, revenues for the fourth quarter fiscal 2001 were $10.01 billion
> compared to $9.57 billion in the fourth quarter fiscal 2000 and diluted earnings
> per share for the fourth quarter of fiscal 2001 were $0.70 per share, compared to
> $1.12 diluted earnings per share in the fourth quarter of fiscal 2000.

525.     That description of the Company's financial results was materially false and

misleading because Defendants failed to disclose that they produced the reported results only

by engaging in the unlawful and improper accounting practices alleged herein.

526.     On November 9, 2001, Tyco filed with the SEC a Form S-4/A (the "November

2001 S-4/A") that amended the October 2001 S-4. Defendant Swartz for himself and for

defendants Kozlowski and Walsh signed the November 2001 S-4/A. Because the November

2001 S-4/A incorporates by reference the same documents as the October 2001 S-4, both SEC

filings contain the materially false and misleading statements set forth in the incorporated

documents.

527.     On November 13, 2001, Tyco filed with the SEC a Prospectus relating to the

business combination between TyCom and Tyco (the "November 2001 Prospectus"). Because

the November 2001 Prospectus incorporates by reference the same documents as the October

2001 S-4, both SEC filings contain the materially false and misleading statements set forth in

the incorporated documents.

528.    Defendants made the following materially false and misleading representations

concerning Tyco's financial results in the November 2001 S-4/A and the November 2001

Prospectus:

> Revenues before non-recurring items ... for the quarter rose 29% to $10.08
> billion compared with last year's $7.80 billion. Diluted earnings per share before
> non-recurring items, extraordinary items and the adoption of SAB 101 for the
> fourth quarter fiscal 2001 were $0.86, a 34% increase over earnings of $0.64 per
> diluted share in the fourth quarter fiscal 2000. After giving effect to such items,
> revenues for the fourth quarter fiscal 2001 were $10.01 billion compared to
> $9.57 billion in the fourth quarter fiscal 2000 and diluted earnings per share for
> the fourth quarter of fiscal 2001 were $0.70 per share, compared to $1.12 diluted
> earnings per share in the fourth quarter of fiscal 2000.
>
> *    *    *
>
> Revenues before non-recurring items and the adoption of SAB 101 for the year
> ended September 30, 2001 increased to $36.29 billion, 25% higher than last
> year's $28.93 billion. Diluted earnings per share before non-recurring charges
> and credits and extraordinary items, and the adoption of SAB 101, for the year
> rose to $2.81 per diluted share, or $5.15 billion, a 29% increase over last year's
> diluted per share earnings of $2.18, or $3.73 billion.

529.    That description of the Company's financial results was materially false and

misleading because Defendants failed to disclose that they produced the reported results only

by engaging in the unlawful and improper accounting practices alleged herein.

### cc.    Defendants' Materially False And Misleading Representations Concerning Tyco's Financial Results For The Fiscal Quarter And Year Ended September 31, 2001

530.    On October 18, 2001, the Tyco Defendants issued a press release concerning the

Company's financial results for the fiscal quarter and year ended September 30, 2001. In that

press release, Defendants made the following materially misleading representations concerning

the Company's financial results:

> Tyco International Ltd. . . . a diversified manufacturing and service company,
> reported today that diluted earnings per share for its fourth quarter ended
> September 30, 2001 were 86 cents, a 34 percent increase over earnings of 64
> cents per share for the same quarter last year. Revenues for the quarter rose 29
> percent to $10.1 billion compared with last year's $7.8 billion. These results are

before non-recurring charges and credits, extraordinary items, and the adoption of Staff Accounting Bulletin No. 101 (SAB 101). After giving effect to such items, diluted earnings per share for the fourth quarter of fiscal 2001 were 70 cents, compared to $1.12 in the fourth quarter of fiscal 2000. Included in the prior year's $1.12 is 59 cents resulting from a gain on the issuance of shares by subsidiary.

For fiscal 2001, income before non-recurring charges and credits, extraordinary items, and the adoption of SAB 101, rose to $2.81 per diluted share, a 29 percent increase over last year's diluted per share earnings of $2.18. After giving effect to such items, diluted earnings per share were $2.17 for fiscal 2001 compared to $2.64 in fiscal 2000. Included in the prior year's $2.64 is 59 cents resulting from a gain on the issuance of shares by subsidiary. Revenues for the twelve months increased to $36.3 billion, 25 percent higher than last year's $28.9 billion.

531.    On December 28, 2001, Tyco filed with the SEC its Form 10-K for the fiscal year ended September 30, 2001 (the "2001 10-K"). Defendants Swartz, Kozlowski and Walsh signed that document.

532.    In the 2001 10-K, Defendants made the following materially false and misleading representations concerning the Company's financial results for the 2001 fiscal year:

Operating income, before certain (charges) credits and accounting change, improved in all segments in each of Fiscal 2001 and Fiscal 2000, with the exception of the Telecommunications segment as discussed below. The operating improvements are the result of both increased revenues in all but our Telecommunications segment and enhanced margins in all but our Healthcare and Specialty Products segment. Increased revenues resulted from acquisitions that are accounted for under the purchase method of accounting and from organic growth. We enhanced our margins through improved productivity and cost reductions in the ordinary course of business, unrelated to acquisition or divestiture activities.

533.    On or about January 11, 2002, Tyco released its 2001 Annual Report to Shareholders (the "2001 Annual Report"). The annual report included a letter to Tyco shareholders from defendant Kozlowski. In that letter, Kozlowski delivered the following materially false and misleading description of the Company's fiscal 2001 financial results:

For the ninth consecutive year, we increased revenues and earnings substantially. Revenues rose 25 percent to $36.3 billion and earnings grew $1.4 billion to $5.1 billion, a 38 percent increase over the prior year. Our diluted earnings per share

increased 29 percent to $2.81. Free cash flow exceeded $4.7 billion in fiscal 2001 and should surpass $5 billion next year.

534.    In addition, the 2001 Annual Report sets forth the materially false and misleading financial statements that appeared in the 2001 10-K.

535.    Defendants' representations concerning Tyco's financial results for the fiscal year and quarter ended September 30, 2001 were materially false and misleading because Defendants did not disclose that they produced the reported results by engaging in the unlawful and manipulative accounting practices alleged herein.

536.    Because the 2001 10-K incorporates by reference Tyco's 2002 Proxy Statement (which was filed with the SEC on January 28, 2002), the 2001 10-K contains the materially false and misleading statements set forth in that Proxy Statement.

### dd.    Defendants' Materially False And Misleading Representations In The January 2002 S-4 And Its Amendment

537.    On January 8, 2002, Tyco filed with the SEC a Form S-4 relating to a proposed merger between McGrath RentCorp and Tyco (the "January 2002 S-4"). That document was signed by defendants Kozlowski, Swartz, and Walsh. The January 2002 S-4 incorporates by reference Tyco's 2001 10-K and is therefore materially false and misleading for the same reasons as the 10-K.

538.    On May 22, 2002, Tyco filed with the SEC a Form S-4/A relating to the proposed merger between McGrath RentCorp and Tyco (the "May 2002 S-4/A"). The May 2002 S-4/A was signed by defendant Swartz for himself and for defendants Kozlowski and Walsh. The May 2002 S-4/A incorporates by reference the 2001 10-K and the May 2002 10-Q, and therefore contains the materially false and misleading representations set forth in those SEC filings.

ee.     **Defendants' Materially False And Misleading Representations Concerning Tyco's Results For Quarter Ended December 31, 2001**

539.    On January 15, 2002, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended December 31, 2001. In that press release,

Defendants made the following materially misleading representations concerning the Company's

financial results:

> Tyco International Ltd. . . . a diversified manufacturing and service company,
> reported today that diluted earnings per share for its first quarter ended December
> 31, 2001 were 74 cents, a 17 percent increase over pro forma earnings of 63 cents
> per share for the same quarter last year. As required, results for the first quarter of
> fiscal 2001 have been restated to reflect the adoption of Staff Accounting Bulletin
> No. 101 (SAB 101) and are presented on a pro forma basis to exclude goodwill
> amortization as a result of the Company's adoption of Statement of Financial
> Accounting Standards No. (SFAS) 142, "Goodwill and Other Intangible Assets."
> Revenues for the quarter rose 25 percent to $10.1 billion compared with last
> year's $8.0 billion. Results presented above are before non-recurring charges and
> credits, extraordinary items, and, for fiscal 2001, the cumulative effect of
> accounting changes. As discussed further below and in the accompanying tables,
> non-recurring charges and credits for the first quarter totaled a charge of
> approximately $26 million, before tax, in fiscal 2002 and a credit of
> approximately $176 million, before tax, in fiscal 2001. After giving effect to such
> non-recurring items, diluted earnings per share before cumulative effect of
> accounting changes and extraordinary items were 73 cents for the first quarter of
> fiscal 2002, compared to 57 cents in the first quarter of fiscal 2001. The
> guidelines of SFAS 142 do not allow for restatement of prior year results.

540.    On February 14, 2002, Tyco filed with the SEC its Form 10-Q for the quarter

ended December 31, 2001 (the "February 2002 10-Q"). That document was signed by

defendant Swartz.

541.    In the February 2002 10-Q, Defendants represented that, for the quarter, Tyco

had produced: revenue of $10,068,100,000; income before income taxes, minority interest,

extraordinary items and cumulative effect of accounting changes of $1,854,100,000; net

income of $1,451,000,000; and earnings of $0.73 per share.

542.   Those statements regarding Tyco's financial results were materially false and

misleading because Defendants failed to disclose that the reported results were achieved only

by engaging in the accounting improprieties and manipulations alleged herein.

543.   The February 2002 10-Q also makes the following materially false and

misleading disclosures concerning Tyco's merger and restructuring reserves:

> At the beginning of fiscal 2002, purchase accounting reserves were $732.1
> million as a result of purchase accounting transactions in prior years. In
> connection with first quarter fiscal 2002 acquisitions, we established purchase
> accounting reserves of $80.7 million for transaction and integration costs. In
> addition, purchase accounting liabilities of $216.2 million and a corresponding
> increase to goodwill and deferred tax assets were recorded during the quarter
> ended December 31, 2001 relating to fiscal 2001 acquisitions. These reserves
> related primarily to revisions associated with finalizing the exit plans of LPS,
> Tyco Capital and SecurityLink, all acquired during fiscal 2001. During the
> quarter ended December 31, 2001, we paid out $176.9 million in cash for
> purchase accounting liabilities, plus $41.8 million relating to earn-out liabilities,
> and incurred $2.6 million in non-cash charges (including $2.3 million relating to
> earn-out liabilities) against the reserves established during and prior to this
> quarter. Certain acquisitions have provisions which require Tyco to make
> additional "earn-out" payments to the sellers, if the acquired company achieves
> certain milestones subsequent to its acquisition by Tyco. Also, in the quarter
> ended December 31, 2001, we determined that $15.8 million of purchase
> accounting reserves related primarily to acquisitions prior to fiscal 2002 were
> not needed and reversed that amount against goodwill. At December 31, 2001,
> there remained $836.0 million in purchase accounting reserves on Tyco
> Industrial's Consolidated Balance Sheet, of which $650.8 million is included in
> accrued expenses and other current liabilities and $185.2 million is included in
> other long-term liabilities.

544.   Those representations were materially false and misleading because, as is

specifically alleged herein, Defendants failed to disclose that they improperly manipulated the

Company's merger and restructuring reserves in order to inflate Tyco's reported financial

results.

ff.    **Defendants' Materially False And Misleading
       Representations Concerning The Company's Financial
       Results For The Quarter Ended March 31, 2002**

545.    On April 25, 2002, the Tyco Defendants issued a press release concerning the

Company's financial results for the quarter ended March 31, 2002. In that press release,

Defendants stated that Tyco had generated a net loss of $0.96 per share during the quarter on

$8,661,500,000 in revenue.

546.    On May 15, 2002, Tyco filed with the SEC the Company's Form 10-Q for the

quarter ended March 31, 2002 (the "May 2002 10-Q"). That document was signed by

defendant Swartz.

547.    In the May 2002 10-Q, Defendants repeated the statements regarding Tyco's

financial results for the quarter made by Defendants in the April 25, 2002 press release.

548.    The May 2002 10-Q also included the following materially misleading

description of Tyco's analysis of whether its assets had been impaired:

> The Company periodically reviews and evaluates its goodwill and other
> intangible assets for potential impairment. Effective October 1, 2001, the
> beginning of Tyco's fiscal year 2002, the Company adopted SFAS No. 142,
> "Goodwill and Other Intangible Assets," under which goodwill is no longer
> amortized but instead is assessed for impairment at least annually. Under the
> transition provisions of SFAS No. 142, there was no goodwill impairment at
> October 1, 2001. Updated valuations were completed as of March 31, 2002 for
> our Tyco Telecommunications (formerly TyCom) reporting unit and Tyco
> Capital, which resulted in no impairment of goodwill at that date.

                                    *    *    *

> However, during the quarter ended March 31, 2002, circumstances developed that
> could potentially impair the value of goodwill with respect to our Tyco
> Telecommunications reporting unit and Tyco Capital. Updated valuations were
> completed as of March 31, 2002, which resulted in no impairment of goodwill at
> that date.

549.    Those representations concerning Tyco's financial results and the Company's

analysis of whether its assets had been impaired were materially false and misleading because:

136

(a) Defendants failed to disclose that Tyco produced the reported results only by engaging in the accounting improprieties and manipulations specifically alleged herein; and (b) as Tyco has now admitted, the May 2002 10-Q substantially understated the Company's net loss because Tyco failed to timely record a loss due to an impairment in the value of its CIT subsidiary. Defendants failed to take that required write down although their contemporaneous analysis revealed that an impairment charge was necessary. When Tyco ultimately restated its March 31, 2002 financial statements, it reported a $4.5 billion impairment in the value of CIT's goodwill. The effect of this charge eliminated almost 40% of the earnings Tyco accumulated over its corporate life.

550.    The May 2002 10-Q also includes the following materially false and misleading description of Tyco's restructuring and merger reserves:

> [A]t the beginning of fiscal 2002, purchase accounting reserves were $732.1 million as a result of purchase accounting transactions in prior years. In connection with fiscal 2002 acquisitions, we established purchase accounting reserves of $182.2 million for transaction and integration costs. In addition, purchase accounting liabilities of $355.7 million and a corresponding increase to goodwill and deferred tax assets were recorded during the six months ended March 31, 2002 relating to fiscal 2001 acquisitions. These reserves related primarily to revisions associated with finalizing the exit plans of LPS, Tyco Capital and SecurityLink, all acquired during fiscal 2001. During the six months ended March 31, 2002, we paid out $318.4 million in cash for purchase accounting liabilities, plus $58.0 million relating to earn-out liabilities, and incurred $26.3 million in non-cash charges and reclassifications (including $2.3 million relating to earn-out liabilities) against the reserves established during and prior to this six-month period. In addition, during the six months ended March 31, 2002, we assumed pre-existing put option rights of $105.9 million, of which $22.2 million has been paid in cash. Certain acquisitions have provisions which require Tyco to make additional "earn-out" payments to the sellers if the acquired company achieves certain milestones subsequent to its acquisition by Tyco. Also, in the six months ended March 31, 2002, we determined that $47.3 million of purchase accounting reserves related to acquisitions prior to fiscal 2002 were not needed and reversed that amount against goodwill. At March 31, 2002, there remained $880.3 million in purchase accounting reserves on Tyco Industrial's Consolidated Balance Sheet, of which $600.3 million is included in accrued expenses and other current liabilities and $280.0 million is included in other long-term liabilities.

551.    Those representations were materially false and misleading because, as alleged in

detail herein, Defendants improperly manipulated Tyco's accounting reserves in a manner

designed to inflate the Company's reported financial results.

**E.      False Representations Made By The PWC Defendants**

552.    In each of the Forms 10-Q filed by the Tyco Defendants with the SEC during

the Relevant Time Period, the Tyco Defendants (with the consent and prior approval of the

PWC Defendants), falsely represented as follows:

> The consolidated financial statements have not been examined by independent
> accountants in accordance with generally accepted auditing standards, but, in the
> opinion of management, such financial statements include all adjustments,
> consisting only of normal recurring adjustments, necessary to summarize fairly
> the Company's financial position and results of operations.

553.    The PWC Defendants consistently issued "clean" audit opinions concerning the

annual financial statements that were attached to the Forms 10-K filed by the Tyco Defendants

with the SEC and which were provided to investors in Tyco's Annual Reports and in other

SEC filings.

554.    Tyco's fiscal 1999 financial statements, which were included in the Form 10-K

filed by the Tyco Defendants with the SEC on December 13, 1999 (the "1999 10-K"), were

audited by the PWC Defendants.

555.    The PWC Defendants issued a "clean" audit opinion concerning the 1999

financial statements that was dated October 21, 1999.

556.    The PWC Defendants' audit opinion falsely stated as follows:

> In our opinion, based upon our audits and the reports of other auditors, the
> accompanying consolidated balance sheets and the related consolidated
> statements of operations, shareholders' equity and cash flows present fairly, in all
> material respects, the financial position of Tyco International Ltd. and its
> subsidiaries at September 30, 1999 and 1998, and the results of their operations
> and their cash flows for the years ended September 30, 1999 and 1998, and the
> nine months ended September 30, 1997, in conformity with accounting principles
> generally accepted in the United States. In addition, in our opinion, the

accompanying financial statement schedule presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements. These consolidated financial statements and financial statement schedule are the responsibility of the Company's management; our responsibility is to express an opinion on these consolidated financial statements and financial statement schedule based on our audits. We did not audit the financial statements of AMP Incorporated, a wholly owned subsidiary, at September 30, 1998, and for the year ended September 30, 1998 and the nine months ended September 30, 1997, which statements reflect total assets constituting 20.1% of consolidated total assets as of September 30, 1998, and net sales constituting 29.0% and 33.6% of consolidated net sales for the year ended September 30, 1998 and the nine months ended September 30 1997, respectively. We did not audit the financial statements of United States Surgical Corporation, a wholly owned subsidiary, for the nine months ended September 30, 1997, which statements reflect net sales constituting 6.8% of consolidated net sales for the nine months ended September 30, 1997. Those statements were audited by other auditors whose reports thereon have been furnished to us, and our opinion expressed herein, insofar as it relates to the amounts included for AMP Incorporated and United States Surgical Corporation, as of and for the periods described above, is based solely on the reports of the other auditors. We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits and the reports of other auditors provide a reasonable basis for the opinion expressed above.

557.   Following the completion of an SEC limited review of the Company's financial reporting, Tyco filed a Form 10-K/A with the SEC on June 26, 2000 (the "June 2000 10-K/A"). The financial statements included in that SEC filing were audited by the PWC Defendants, who issued a clean audit opinions with respect to the financial statements.

558.   The PWC Defendants' audit opinion was identical to the opinion that appeared in the 1999 10-K, except the opinion was dated as of June 12, 2000 insofar as it related to "a 'Revision' in Note 1 [to the financial statements], which was dated as of June 12, 2000." In addition, the opinion contained the following additional paragraph:

> As discussed under the heading "Revision" in Note 1, the accompanying consolidated financial statements for the fiscal year ended September 30, 1999

have been revised to adjust merger, restructuring and other non-recurring charges and charges for the impairment of long-lived assets for the timing and classification of certain charges.

559.   Tyco's fiscal 2000 financial statements, which were included in the Form 10-K filed by the Tyco Defendants with the SEC on December 21, 2000 (the "2000 10-K"), were audited by the PWC Defendants.

560.   The PWC Defendants issued a clean audit opinion dated October 24, 2000, concerning the 2000 financial statements (except as to Note 25, which was dated as of December 4, 2000).

561.   In their audit opinion, the PWC Defendants falsely stated as follows:

In our opinion, based upon our audits and the report of other auditors, the accompanying consolidated balance sheets and the related consolidated statements of operations, shareholders' equity and cash flows present fairly, in all material respects, the financial position of Tyco International Ltd. and its subsidiaries at September 30, 2000 and 1999, and the results of their operations and their cash flows for each of the three years in the period ended September 30, 2000, in conformity with accounting principles generally accepted in the United States of America. In addition, in our opinion, the accompanying financial statement schedule presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements. These financial statements and financial statement schedule are the responsibility of the Company's management; our responsibility is to express an opinion on these financial statements and financial statement schedule based on our audits. We did not audit the financial statements of AMP Incorporated, a wholly owned subsidiary, as of September 30, 1998, and for the year ended September 30, 1998, which statements reflect total assets of 20.1% of the related consolidated total assets as of September 30, 1998, and net sales of 29.0% of the related consolidated total sales for the year ended September 30, 1998. Those statements were audited by other auditors whose report thereon has been furnished to us, and our opinion expressed herein, insofar as it relates to the amounts included for AMP Incorporated, as of and for the period described above, is based solely on the report of the other auditors. We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall

financial statement presentation. We believe that our audits and the report of other auditors provide a reasonable basis for our opinion.

562.    The PWC Defendants audited Tyco's fiscal 2001 financial statements, which were included in the Form 10-K filed by the Tyco Defendants with the SEC on December 28, 2001 (the "2001 10-K").

563.    The PWC Defendants issued a clean audit opinion concerning the 2001 financial statements that was dated October 18, 2001 (except as to Note 31, which was dated as of December 18, 2001).

564.    In their audit opinion, the PWC Defendants falsely stated as follows:

In our opinion, based upon our audits, the accompanying consolidated balance sheets and the related consolidated statements of operations, of shareholders' equity and of cash flows present fairly, in all material respects, the financial position of Tyco International Ltd. and its subsidiaries at September 30, 2001 and 2000, and the results of their operations and their cash flows for each of the three years in the period ended September 30, 2001, in conformity with accounting principles generally accepted in the United States of America. In addition, in our opinion, the accompanying financial statement schedule presents fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements. These financial statements and financial statement schedule are the responsibility of the Company's management; our responsibility is to express an opinion on these financial statements and financial statement schedule based on our audits. We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion. As described in Note 18, the Company changed its method of revenue recognition and changed its method of accounting for derivative instruments and hedging activities.

565.    Contrary to Defendants' representations, however, the financial results disclosed, approved and audited by Defendants failed to comply with GAAP, as they did not contain all adjustments necessary to summarize fairly the Company's financial position and

results of operations. Additionally, the financial statements failed to contain fair and complete disclosures as required by GAAP. Furthermore, the PWC Defendants falsely represented that its audits complied with the requirements of GAAS, when in fact they did not.

### F.    Violations Of GAAP And GAAS

566.    Defendants' representations concerning Tyco's financial results were materially false and misleading because such results were consistently inflated for the reasons specified herein.

567.    In addition, the Defendants' failures to disclose the compensation paid to Walsh and the Officer Defendants and the Company's related-party transactions were contrary to Defendants' consistent assurances to investors that the Company's disclosures regarding such matters complied with applicable SEC regulations and the requirements of GAAP and GAAS.

568.    By consistently understating and failing to disclose the amounts paid to the Officer Defendants and Walsh, and by failing to accurately disclose the material related-party transactions in which Tyco engaged, Defendants violated GAAP and the SEC regulations requiring the accurate disclosure of such information, including:

a.    Item 402 of SEC Regulation S-K, which "requires clear, concise and understandable disclosure of all plan and non-plan compensation awarded to, earned by, or paid to" a company's CEO and four next highest-paid executives;

b.    Item 404 of Regulation S-K, which requires detailed disclosures concerning any transaction having a value of more than $60,000 involving the issuer or one of its subsidiaries in which any of the issuer's officers or directors or any member of their immediate families has a material interest;

c.    Item 404 of Regulation S-K, which requires companies to accurately disclose the purpose of any loan in excess of $60,000 made to an officer or director of an

issuer, the largest amount of any such loan outstanding during the course of a year and the rate of interest paid on any such loan.

      d.      Statement of Financial Accounting Standards ("SFAS") No. 57, Related Party Disclosures, requires that in order for financial statements to comply with GAAP, they must include disclosure of material related party transactions, including the nature of the relationship, description of the transactions, dollar amount of the transactions and amounts due to or from related parties.

569.      Defendants' failure to adhere to those GAAP requirements was particularly important because, as the SEC has recognized in SAB Topic 4E (a GAAP provision), disclosures regarding such matters are material to investors as "it should be noted generally that all amounts receivables from officers and directors resulting from sales of stock or from other transactions should be separately stated in the balance sheet."

570.      Defendants' representations concerning Tyco's financial results were also materially false and misleading because the SEC's SAB Topic 4G requires that notes and receivables resulting from the purchase/sale of the company's stock should be reported as a reduction of stockholders' equity. In violation of that requirement, Defendants failed to report the vast amounts owed to Tyco by the Officer Defendants, Walsh and other affiliates resulting from Tyco stock transactions as a reduction of the Company's stockholder's equity. Defendants therefore consistently overstated Tyco's stockholders' equity on the Company's financial statements.

571.      By engaging in the accounting manipulations specified above, Defendants also violated Accounting Principles Board ("APB") Opinion No. 22. That GAAP provision recognizes that financial statements must accurately disclose the accounting policies followed by a company to be useful to investors. In light of the fact that Tyco's financial statements

violated numerous GAAP provisions, Defendants did not comply with APB Opinion No. 22's requirement that they accurately disclose Tyco's accounting policies.

572.    Furthermore, even had Tyco's accounting practices not violated GAAP, APB Opinion No. 22, ¶8 would have required Defendants to make additional disclosures concerning the Company's admitted policy of continually applying aggressive interpretations of the requirements of GAAP.

573.    Disclosure of those aggressive policies was required because ¶12 of APB Opinion No. 22 mandates that "disclosure should encompass important judgments as to appropriateness of principles relating to recognition of revenue and allocation of asset costs to current and future periods." In particular, that GAAP provision mandated that Defendants disclose the reasons for their "selection from existing acceptable alternatives" and "[u]nusual or innovative applications of generally accepted accounting principles."

574.    Defendants violated those requirements by failing to disclose, among other things: (a) their continued reliance upon aggressive accounting policies to produce the results reported by Tyco; (b) their decision to rely upon the assumption that the attrition rate among ADT customers was only 8.5% per year in calculating that unit's financial results despite their knowledge of contrary information; (c) the improper manner in which ADT accounted for its "account connection fee"; and (d) their failure to write off CIT's goodwill in a timely manner.

575.    By consistently applying unduly aggressive interpretations of certain GAAP principles and completely ignoring others, Defendants violated a host of additional GAAP requirements. In particular, Defendants failed to comply with the following provisions of GAAP:

      a.    FASB Concepts Statement No. 1, which states that the role of "financial reporting requires it to provide evenhanded, neutral, or unbiased information";